UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANGEMARIE SAINT VIL, f/k/a
MARIEANGE CASSIGNOL,

    Plaintiff,

    v.

WELLS FARGO HOME MORTGAGE,
U.S. BANK NATIONAL ASSOCIATION,
individually, and as TRUSTEE OF THE
CITIGROUP MORTGAGE LOAN TRUST,
INC. 2006 NC2, ASSET BACKED PASS
THROUGH CERTIFICATES SERIES 2006-
NC2,

    Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Civil Action No. 17-cv-12121-ADB

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

   Plaintiff Angemarie Saint Vil filed suit against Wells Fargo Home Mortgage ("Wells

Fargo") and U.S. Bank National Association, individually and as Trustee of the Citigroup

Mortgage Loan Trust, Inc. 2006 NC2, Asset Backed Pass Through Certificates Series 2006-NC2

("U.S. Bank," and together, "Defendants"). This suit arises out of the threatened foreclosure of

Plaintiff's residence in Malden, MA (the "Property"). Now pending before the Court is

Defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6). [ECF No. 13]. For the reasons discussed below, the Court <u>GRANTS IN

PART</u> and <u>DENIES IN PART</u> the Defendants' motion to dismiss.

## I.  BACKGROUND

   The following facts are drawn from Plaintiff's Complaint [ECF No. 1-1 (hereinafter, the

"Complaint")], the well-pleaded allegations of which are taken as true for purposes of evaluating

Defendants' motion to dismiss.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  Certain details are also culled from documents whose authenticity are not disputed by the parties, official public records, and documents sufficiently referred to in the complaint or attached thereto.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

Plaintiff is a Massachusetts resident who lives at the Property with her three children. Complaint ¶ 1.  On July 7, 2006, Nazon St. Vil Maurilus, Plaintiff's former husband, executed a promissory note in the amount of $410,000 (the "Note") in exchange for a refinanced mortgage (the "Mortgage") on the Property from New Century Mortgage Corporation ("New Century"). Id. ¶¶ 7–9, 11; [ECF No. 13-2].  Both Mr. St. Vil Maurilus and Plaintiff executed the Mortgage. Complaint ¶ 11.

On April 2, 2007, New Century and certain related entities filed for chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware.  Id. ¶ 13.  On June 20, 2007, New Century granted Wells Fargo Bank, N.A. a limited power of attorney that authorized it, *inter alia*, to "execute, acknowledge, seal, and deliver . . . assignments of . . . mortgage" on New Century's behalf.  [ECF No. 13-4].  On January 3, 2012, Wells Fargo Bank, N.A., recorded an assignment of the Mortgage executed on December 30, 2011 on behalf of New Century to U.S. Bank (the "Assignment").  Complaint ¶ 22; [ECF No. 13-3].

In 2014, Mr. St. Vil Maurilus stopped living at the Property and divorce proceedings commenced.  Complaint ¶ 24.  Plaintiff obtained a restraining order against Mr. St. Vil Maurilus after he threatened her with physical violence.  Id. ¶ 26.

On January 5, 2016, Wells Fargo and America's Servicing Company sent Plaintiff a Right to Cure notice and a Right to Request a Modified Loan notice.  Id. ¶ 28.  Plaintiff

authorized her attorney to ask Wells Fargo about loan modification options that would enable her to retain the Property, but Wells Fargo refused to discuss loss mitigation with her attorney because Plaintiff did not execute the Note. Id. ¶ 31. On December 22, 2016, an attorney for U.S. Bank notified Plaintiff by letter that the Property would be sold at auction. Id. ¶ 41–42. After January 23, 2017, Plaintiff was erroneously told that the Property had been sold at auction. Id. ¶ 43.

On February 6, 2017, Plaintiff sent a letter to Wells Fargo requesting information about the loan and the foreclosure. Id. ¶¶ 45–47. Plaintiff and Mr. St. Vil Maurilus settled their divorce action on February 8, 2017; in the settlement, Plaintiff was granted Mr. St. Vil Maurilus's interest in the Property. Id. ¶ 27. On February 13, 2017, Wells Fargo sent a letter to Plaintiff that notified her that it serviced the Mortgage on behalf of U.S. Bank and falsely stated that the Property had been sold at a foreclosure sale on January 23, 2017. Id. ¶¶ 48–52. Along with the February 13, 2017 letter, Wells Fargo sent Plaintiff copies of the Mortgage, the Assignment, and a Customer Account Activity Statement dated January 8, 2016. Id. ¶¶ 50, 53. The Customer Account Activity Statement contained an entry for $765.00 in attorney's fees that had been added to the Mortgage account on January 8, 2016. Id. ¶¶ 54–55.

On May 12, 2017, an attorney for U.S. Bank sent a letter to Plaintiff notifying her that the Property would be sold at auction on June 9, 2017. Id. ¶ 58. Plaintiff also received a letter from Wells Fargo dated May 15, 2017 and addressed to Mr. St. Vil. Maurilus that described options for avoiding foreclosure. Id. ¶ 60. On May 31, 2017, Plaintiff's attorney sent Defendants a demand letter pursuant to M.G.L. c. 93A, § 9 notifying Defendants that Plaintiff would bring a lawsuit to enjoin the foreclosure and for damages. Id. ¶ 62. On June 9, 2017, Defendants' attorney represented that Defendants would postpone the June 9, 2017 auction to allow Plaintiff

time to apply for a loan modification.  Id. ¶ 64.  Notwithstanding that representation, Plaintiff

later received a letter from Wells Fargo stating that it would go forward with the June 9, 2017

auction.  Id. ¶ 65.  Plaintiff stayed home on June 9, 2017 and observed that there was no auction

or public proclamation of postponement that day.  Id. ¶ 66.  Defendants later notified Plaintiff

that the auction had been rescheduled.  Id. ¶ 67.

On or about July 27, 2017, Plaintiff applied to assume and modify the loan.  Id. ¶ 69.  On

September 22, 2017, Wells Fargo notified Plaintiff that it had denied her application for a loan

modification and that she had a right to appeal.  Id. ¶ 76.  On October 5, 2017, Plaintiff appealed

the denial of her loan modification application.  Id. ¶ 84.  On October 10, 2017, Wells Fargo

denied Plaintiff's appeal.  Id. ¶ 88.  On October 17, 2017, during a telephone conversation with

Plaintiff's attorney, Wells Fargo stated that an auction of the Property was scheduled for October

26, 2017.  Id. ¶ 90.

Plaintiff sent Defendants a second demand letter pursuant to M.G.L. c. 93A, and on

October 25, 2017, Plaintiff filed a Complaint and an emergency motion for a temporary

restraining order and a preliminary injunction in the Massachusetts Superior Court for Middlesex

County.  [ECF No. 1 at 2].  The court issued a temporary restraining order and scheduled a

hearing on the preliminary injunction motion for October 30, 2017.  [Id.].  On October 30, 2017,

Defendants removed the action to this Court based on diversity jurisdiction, and rescheduled the

foreclosure auction for December 11, 2017.  [Id. at 1, 2 n.2].  On December 14, 2017,

Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  [ECF No. 13].  Defendants have postponed the scheduled foreclosure auction of the

Property at least two additional times.  [See ECF No. 10 ¶ 5 (postponing the foreclosure sale

until at least February 12, 2018); ECF No. 25 (postponing the foreclosure sale during stay to pursue potential settlement)].

## II.     STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted).  The facts alleged, taken together, must "state a claim to relief that is plausible on its face."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).  "[T]he court may not

disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed. Iqbal, 556 U.S. at 679.

## III.    ANALYSIS

### A.    Legal Framework

In Massachusetts, a mortgage that includes a power of sale, as Plaintiff's Mortgage does, incorporates by reference the statutory power of sale established under M.G.L. c. 183, § 21 and M.G.L. c. 244, §§ 11–17C. See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 49–50 (Mass. 2011). Under M.G.L. c. 183, § 21, after a mortgagor defaults in the performance of the underlying note, "[a] mortgage holder may foreclose on a mortgage that includes a power of sale without prior judicial authorization." Ross v. Deutsche Bank Nat. Tr. Co., 933 F. Supp. 2d 225, 230 (D. Mass. 2013). "Even where there is a dispute as to whether the mortgagor was in default or whether the party claiming to be the mortgage holder is the true mortgage holder, the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure." Ibanez, 941 N.E.2d at 49 (citing Beaton v. Land Court, 326 N.E.2d 302, 307 (Mass. 1975)). "Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, [Massachusetts courts] adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms.'" Id. at 49–50.

"One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." Id. at 50. The statutory power of sale can be exercised by "the

mortgagee or his executors, administrators, successors or assigns." M.G.L. c. 183, § 21. An assignee exercising the power of sale "must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale." Ibanez, 941 N.E.2d at 53. "To establish itself as the mortgage holder, 'a foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage.'" Simmons v. Deutsche Bank Nat'l Tr. Co., No. 18-cv-10136-ADB, 2018 WL 1924453, at *3 (D. Mass. Apr. 24, 2018) (quoting Orellana v. Deutsche Bank Nat'l Trust Co., No. 12-cv-11982-NMG, 2013 WL 5348596, at *7 (D. Mass. Aug. 30, 2013)). "A mortgage assignment executed by an assignor who has no interest to assign or 'no authority to make an assignment to a particular assignee' is thus void and does not confer upon the assignee the legal status required to exercise the power of sale." Ross, 933 F. Supp. 2d at 230 (quoting Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 290 (1st Cir. 2013)).

In addition, a mortgage holder seeking to foreclose pursuant to M.G.L. c. 183, § 21 must strictly follow the statutory notice provisions. M.G.L. c. 244, § 14 governs the procedure for providing proper notice of foreclosure under the power of sale. Section 14 requires "[a]dvance notice of the foreclosure sale . . . by publication in a newspaper published or generally circulating in the town where the mortgaged property lies," Culhane v. Aurora Loan Servs. of Nebraska, 826 F. Supp. 2d 352, 362 (D. Mass. 2011), aff'd, 708 F.3d 282 (1st Cir. 2013), and also "that a mortgagee send notice of the foreclosure to the mortgagor at least fourteen days prior to the date of the sale." Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 80 (D. Mass. 2012). "[T]he failure to identify the holder of the mortgage in the notice of sale may render the notice defective." Ibanez, 941 N.E.2d at 50. Further, "while details of the initial auction must be

provided by written notice to the appropriate parties and published in a newspaper . . . , a postponement of the sale may be announced by public proclamation to those present at the auction site." Fitzgerald v. First Nat. Bank of Bos., 703 N.E.2d 1192, 1194 (Mass. App. Ct. 1999).

Under M.G.L. c. 244, § 35A, mortgagors are entitled to a 90-day right to cure a mortgage default before a mortgagee can commence the foreclosure process by invoking the statutory power of sale. See M.G.L. c. 244, § 35A(a)–(b). Pursuant to the statutory scheme, a mortgagee that seeks to foreclose on a mortgage must notify the mortgagor of his right to cure, and "shall not accelerate maturity of the unpaid balance of such mortgage" or "otherwise enforce the mortgage" until at least 90 days after the service of such notice. Id. at § 35A(b). The Right to Cure notice must be "given by the mortgagee to the mortgagor," and must provide the mortgagor with certain categories of information, including the nature of the default, the date by which the mortgagor must cure the default to avoid acceleration, and the telephone number for a representative of the mortgagee whom the mortgagor may contact if the mortgagee disagrees with the mortgagee's assertion that a default has occurred or the mortgagee's calculation of the amount required to cure the default. Id. at § 35A(c). Section 35A further provides that "[t]he mortgagor shall not be liable for any attorneys' fees relating to the mortgagor's default that are incurred by the mortgagee or anyone holding thereunder prior to or during the period set forth in the notice required by this section." Id. at § 35A(d). A mortgagor alleging a violation of Section 35A in a pre-foreclosure suit can enjoin a foreclosure by establishing that the mortgagee's Right to Cure notice was inadequate. See U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 890–91 (Mass. 2014) (Gants, J., concurring).

Under M.G.L. c. 244, § 35B, a creditor must "first take[] reasonable steps and ma[ke] a good faith effort to avoid foreclosure" before publishing notice of a foreclosure sale under M.G.L. c. 244, § 14. M.G.L. c. 244, § 35B(b). "A creditor is deemed to have taken reasonable steps and made a good faith effort to avoid foreclosure if the creditor has considered:"

> (i) An assessment of the borrower's ability to make an affordable monthly payment; (ii) the net present value of receiving payments under a modified mortgage loan as compared to the anticipated net recovery following foreclosure; and (iii) the interest of the creditor, including, but not limited to, investors.

Bek v. Wells Fargo Home Mortg., No. 18-cv-11096-DHH, 2018 WL 4292284, at *7 (D. Mass. Sept. 7, 2018) (quoting M.G.L. c. 244, § 35B(b)). Section 35B defines "borrower" as "a mortgagor of a mortgage loan." M.G.L. c. 244, § 35B(a). For "certain mortgage loans," Section 35B requires a creditor to notify the borrower of his or her right to pursue a modified mortgage loan. Id. at § 35B(c). The statutory scheme sets forth a follow-up process that the creditor must comply with after receiving a response from the borrower indicating his or her intent to pursue a loan modification, including that the creditor must provide the borrower with a written assessment that includes, *inter alia*, a written statement of the borrower's income, debts and obligations as determined by the creditor, the creditor's net present value analysis of the mortgage loan, and a modified mortgage loan offer or a notice that no modified mortgage loan will be offered. See id.

### B.     Counts I and II (Violations of M.G.L. c. 244 § 14)

Count I alleges that U.S. Bank lacks authority and jurisdiction to foreclose under the statutory power of sale because New Century did not have title to the Mortgage at the time that Wells Fargo Bank, N.A. executed the Assignment, as the Mortgage, along with New Century's other assets, had vested in the Liquidating Trust in bankruptcy. Complaint ¶¶ 12–23, 93–99. Count II alleges that the auction notice that Defendants sent to Plaintiff and published pursuant

to M.G.L. c. 244, § 14 was invalid because it failed to recite the Liquidating Trust's acquisition of the Mortgage. Id. ¶¶ 100–06. Defendants argue that Counts I and II must fail because U.S. Bank is the valid mortgage holder and is authorized under Section 14 to foreclose on the property. [ECF No. 13-1 at 5–9]. Specifically, Defendants argue that the Bankruptcy Court authorized the Assignment to U.S. Bank when it confirmed New Century's dissolution plan which became effective August 1, 2008. [Id. at 6].

On April 2, 2007, New Century and various affiliates filed chapter 11 petitions in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). In re New Century TRS Holdings, Inc., 07-10416-BLS (Bankr. D. Del.) (the "Bankruptcy Case"). On July 15, 2008, the Bankruptcy Court entered an order (the "Original Confirmation Order") confirming New Century's chapter 11 plan (the "Original Plan"), which became effective August 1, 2008 (the "Original Effective Date"). [Bankruptcy Case ECF No. 8596; Bankruptcy Case ECF No. 9904 at 6]. Pursuant to the Original Plan, on the Original Effective Date, all of New Century's remaining assets were assigned to and assumed by a liquidating trust (the "Liquidating Trust"), to be administered by a liquidating trustee (the "Liquidating Trustee"), in order to sell New Century's assets and wind down its business. [Bankruptcy Case ECF No. 5395-11 at 9–10; Bankruptcy Case ECF No. 9904 at 6]. The Original Confirmation Order contains the following language:

> General Authority. . . . with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the applicable Debtor, if on or prior to the Effective Date, or the Liquidating Trust, if after the Effective Date, shall execute upon written request, . . . any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Debtor or Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor . . . to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the

> Liquidating Trustee, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such loan. . . . ***Powers of attorney executed by the Debtors prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors***.

[Bankruptcy Case ECF No. 8596 ¶ 72 (emphasis added)]. This provision of the Original Confirmation Order made all powers of attorneys executed by New Century prior to its dissolution on the Original Effective Date binding on the New Century Liquidating Trust and the Liquidating Trustee.

Following an appeal, on June 16, 2009, the United States District Court for the District of Delaware reversed the Original Confirmation Order. In re New Century TRS Holdings, Inc., 407 B.R. 576 (D. Del. 2009). On November 20, 2009, the Bankruptcy Court entered an order (the "Second Confirmation Order") confirming New Century's modified chapter 11 plan (the "Modified Plan"). [Bankruptcy Case ECF Nos. 9957, 9957-2–9957-9]. The Modified Plan also provided that all of New Century's remaining assets were assigned to and assumed by the Liquidating Trust as of the Original Effective Date, to be administered by the Liquidating Trustee, in order to sell New Century's assets and wind down its business. [Bankruptcy Case ECF No. 9957-2 at 64–65]. The Second Confirmation Order also provides that all powers of attorneys executed by New Century prior to its dissolution on the Original Effective Date would continue to be effective and bind the New Century Liquidating Trust and the Liquidating Trustee:

> General Authority. . . . with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request . . . any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee . . . necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of

such mortgage loan from such Debtor . . . to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage . . . related to such mortgage loan. . . . ***Powers of attorney executed by the Debtors pursuant to the Original Plan prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors***.

[Bankruptcy Case ECF No. 9957 at ¶ 69 (emphasis added)].

Defendants argue that the Assignment of the Mortgage to U.S. Bank is valid because Wells Fargo Bank, N.A. executed it on behalf of New Century pursuant to a valid power of attorney. [ECF No. 13-1 at 7]. That power of attorney was executed on June 20, 2007 and includes the power to "execute . . . assignment[s]." [ECF No. 13-4]. According to Defendants, that power of attorney was binding on the Liquidating Trustee and Liquidating Trust pursuant to the Original and Second Confirmation Orders and forecloses Plaintiff's argument that New Century could not have validly assigned the Mortgage to U.S. Bank. [ECF No. 13-1 at 7–8]. Plaintiff responds that, at most, Wells Fargo Bank, N.A. had the authority to assign the Mortgage on behalf of the Liquidating Trustee and the Liquidating Trust, but that the Assignment purported to assign Plaintiff's Mortgage on behalf of New Century. [ECF No. 18 at 5–6]. The Assignment on behalf of New Century, Plaintiff contends, is a nullity because at the time that Wells Fargo Bank, N.A. executed it, New Century's assets had vested in the Liquidating Trust and New Century was no longer the holder of the Mortgage. [Id. at 6–7]. In their Reply, Defendants argue that the Bankruptcy Court expressly permitted New Century to assign mortgages through powers of attorney irrespective of the Liquidating Trust, and further, that the U.S. Bankruptcy Court for the Eastern District of New York has rejected Plaintiff's argument in In re Richmond, 534 B.R. 479 (Bankr. E.D.N.Y. 2015). [ECF No. 21 at 2–3]. In a footnote, Defendants also assert that, notwithstanding their argument that the Assignment of the Mortgage by New Century to U.S. Bank is "valid and effective," id. at 3, Plaintiff's argument also fails

because New Century previously transferred Plaintiff's Mortgage to a securitized trust for which U.S. Bank acts as a trustee in 2006, id. at 3–4 n.3.

The Court finds that Plaintiff has alleged sufficient facts to set forth a plausible claim that Defendants are not entitled to exercise the statutory power of sale because the Assignment of Plaintiff's Mortgage to U.S. Bank was invalid and void. As described supra at 7, "a foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage." Sullivan v. Kondaur Capital Corp., 7 N.E.3d 1113, 1119 (Mass. App. Ct. 2014). "While it is true that bankruptcy law ordinarily permits a mortgage lender with debtor in possession status to execute and record assignments in the normal course of its business, . . . the presumption that such transfers are permitted is defeated when a bankruptcy court has confirmed a plan requiring the dissolution of the corporation, the termination of the company's operations, or the divestiture of its assets." Ross, 933 F. Supp. 2d 225, 231 (D. Mass. 2013) (citations omitted). Pursuant to the Original and Second Confirmation Orders, all of New Century's assets were assigned to and assumed by the Liquidating Trust as of August 1, 2008. [Bankruptcy Case ECF No. 5395-11 at 9–10; Bankruptcy Case ECF No. 9957-2 at 64–65]. Following that transfer of assets, New Century had no further interest in the Liquidating Trust Assets or the Liquidating Trust. [Bankruptcy Court ECF No. 9904-2 at 64–65]. Even assuming that, as Defendants contend, New Century granted Wells Fargo Bank, N.A. a power of attorney that was binding on the Liquidating Trust pursuant to the Original and Second Confirmation Orders, Defendants have not substantiated how Wells Fargo Bank, N.A. could assign the Mortgage on behalf of New Century after the Mortgage was conveyed to the Liquidating Trust and New Century no longer

held any interest in it.[1]  In addition, Defendants' claim that, in 2006, New Century transferred

Plaintiff's Mortgage to a securitized trust for which U.S. Bank acts as a trustee pursuant to a

Master Mortgage Loan Purchase and Interim Service Agreement and a Pooling Services

Agreement further calls into question whether U.S. Bank obtained valid title to the Mortgage

through the Assignment executed on behalf of New Century.  [See ECF No. 21 at 3–4 n.3].

Thus, accepting Plaintiff's allegations as true, the Court is unable to find at this time that the

Assignment is valid and that Defendants are authorized under M.G.L. c. 244, § 14 to foreclose

on Plaintiff's property.

C.  **Counts III (Violation of M.G.L. c. 244 § 14), IV (Violation of M.G.L. c. 244 § 35B), V (Violation of M.G.L. c. 244 § 35A), and VIII (Breach of Contract)**

In Count III, Plaintiff alleges that Defendants failed to comply with the notice

requirements under M.G.L. c. 244 § 14 because Defendants did not make a public proclamation

of postponement of the June 9, 2017 auction.  Complaint ¶¶ 107–13.  In Count IV, Plaintiff

alleges that Defendants failed to take reasonable steps or make a good faith effort to avoid

foreclosure in violation of M.G.L. c. 244 § 35B where Defendants refused to permit Plaintiff to

seek a loan modification until her divorce was finalized, did not conduct a Net Present Value

calculation when evaluating Plaintiff's loan modification application, and failed to comply with

Consumer Financial Protection Bureau regulations when they evaluated Plaintiff's loan

modification application.  Id. ¶¶ 114–24.  In Count V, Plaintiff alleges that Defendants did not

---

[1] Defendants argue that the court in In re Richmond, 534 B.R. 479, 490 (Bankr. E.D.N.Y. 2015) found an assignment to be valid and effective under identical circumstances, but the Court disagrees.  In that case, the court rejected the mortgagor's argument that a mortgage assignment was unauthorized where New Century executed a power of attorney prior to its dissolution because the Court found that the power of attorney was binding on the Liquidating Trust pursuant to the Original and Modified Confirmation Orders.  Id. at 490–91.  The court did not address whether an assignment could be made on behalf of New Century after its assets vested in the Liquidating Trust and New Century retained no valid interest to assign.

comply with M.G.L. c. 244 § 35A because Defendants added attorney's fees to the Mortgage account during the Right to Cure period.  Id. ¶¶ 125–31.  In Count VIII, Plaintiff alleges that Defendants breached the Mortgage contract by failing to foreclose in accordance with "Applicable Law," including M.G.L. c. 244 §§ 14, 35A, 35B, and Consumer Financial Protection Bureau regulation 12 C.F.R. § 1024.41.  Id. ¶¶ 168–72.  Citing no case law, Defendants contend that Counts III, IV, V, and VIII are not ripe for adjudication because no foreclosure sale has occurred.  [ECF No. 13-1 at 9].[2]  Defendants further argue that Count VIII must be dismissed to the extent that it relies on Defendants' alleged duties under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA").  [ECF No. 13-1 at 12–13].

"[T]he doctrine of ripeness has roots in both the Article III case or controversy requirement and in prudential considerations."  Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003).  "There are two factors to consider in determining ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (citation omitted).  The First Circuit "generally require[s] both prongs to be satisfied in order for a claim to be considered ripe."  Id.

Here, the Court finds that Counts III, IV, V, and VIII are fit for judicial decision.  A homeowner, facing foreclosure, who claims that the mortgage holder has failed to comply with the statutory requirements of M.G.L. c. 244 § 14 (Count III), id. § 35A (Count V), and id. § 35B (Count IV) may file an equitable action seeking to enjoin the foreclosure.  See, e.g., Strawbridge v. Bank of New York Mellon, 79 N.E.3d 1103, review denied, 94 N.E.3d 851

---

[2] Defendants also argue that the Court should dismiss Count IV because the Assignment of the Mortgage from New Century to U.S. Bank was valid.  As explained supra at 13–14, taking Plaintiff's allegations as true, the Court is unable to find at this time that the Assignment is valid.

(Mass. App. Ct. 2017) (plaintiff's pre-foreclosure claim for injunctive relief to challenge alleged violations of M.G.L. c. 244 § 14 was ripe for adjudication); <u>Schumacher</u>, 5 N.E.3d at 884 n.4 ("[F]iling an independent equity action in the Superior Court" to enjoin foreclosure is a "proper avenue by which a homeowner can challenge a mortgagee's compliance with [M.G.L.] c. 244, § 35A."); <u>Bek</u>, 2018 WL 4292284, at *7 (D. Mass. Sept. 7, 2018) (plaintiff's pre-foreclosure claim for injunctive relief to challenge alleged violation of M.G.L. c. 244 § 35B was ripe for adjudication). In addition, Paragraph 22 of Plaintiff's Mortgage expressly provides that the Borrower has the "right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." [ECF No. 13-2 ¶ 22].

Count VIII is also fit for judicial decision because Plaintiff has specified that Defendants have failed to comply with, *inter alia*, M.G.L. c. 244, §§ 14, 35A, and 35B. Sections 14, 35A, and 35B are "applicable" to the foreclosure process in Massachusetts and are therefore incorporated into Plaintiff's Mortgage contract.

Additionally, the Court finds that the hardship prong is satisfied. At this juncture, Plaintiff has plausibly alleged that the threat of foreclosure has "create[d] a direct and immediate dilemma for" her. <u>Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322</u>, 651 F.3d 176, 188 (1st Cir. 2011) (citation and internal quotation marks omitted). The Court credits Plaintiff's assertion that she "feels anxious when her children ask her what is going to happen to their home or where they will live, and she does not know what to tell them." Complaint ¶ 91. Thus, drawing all inferences in her favor, Plaintiff's complaint states sufficient facts to show that Counts III, IV, V, and VIII are ripe for a pre-foreclosure action to enjoin the threatened foreclosure.

Defendants argue that Count VIII must be dismissed to the extent that it relies on Defendants' alleged violation of 12 C.F.R. § 1024.41, which provides a private right of action for violations of Section 6(f) of RESPA. [ECF No. 13-1 at 12–13]. The express language of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41 limits a defendant's liability to "borrowers." While RESPA does not define the term "borrower," "[a] number of federal courts have held that only individuals who execute the promissory note are 'borrowers' with standing to bring a RESPA claim." Nelson v. Nationstar Mortg. LLC, No. 16-cv-307-BR, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) (collecting cases); see also Lackie v. PHH Mortg. Corp., No. 17-cv-377-BT, 2018 WL 4409799, at *2 (N.D. Tex. Sept. 17, 2018) (finding that the term "borrower" under RESPA "applies only to a borrower on the loan—that is a person who signed the promissory note or assumed the loan").

Here, Plaintiff did not execute the Note and admits that Nazon St. Vil Maurilus executed the Note. Complaint ¶ 11. Plaintiff alleged that she "applied to assume the loan," id. ¶ 69, but not that she actually assumed the loan. Thus, even accepting as true Plaintiff's allegations that she co-signed the Mortgage securing the Note and was deeded the property, id. ¶¶ 11 and 73, Plaintiff is not a "borrower" under RESPA. See Dionne v. Fed. Nat'l Mortg. Ass'n, No. 15-cv-56-LM, 2016 WL 6892465, at *5 (D.N.H. Nov. 21, 2016) ("[A] plaintiff named as a borrower in the mortgage but who did not sign the note lacks standing to pursue a RESPA violation.").[3]

---

[3] Plaintiff relies on Washington v. Green Tree Servicing LLC, No. 15-cv-354, 2017 WL 1857258 (S.D. Ohio May 5, 2017), report and recommendation adopted, 2017 WL 2599252 (S.D. Ohio June 15, 2017) and Frank v. J.P. Morgan Chase Bank, N.A., No. 15-cv-5811-LB, 2016 WL 3055901 (N.D. Cal. May 31, 2016) to argue that she qualifies as a "borrower" under RESPA. The Court finds that those cases are distinguishable because they involve plaintiffs who were successors in interest in the property following the death of the borrower. The Consumer Financial Protection Bureau recently amended 12 C.F.R. § 1024 to clarify that "[a] confirmed successor in interest shall be considered a borrower for purposes of [12 C.F.R. § 1024.41]." Washington, 2017 WL 1857258, at *5 (quoting Amendments to the 2013 Mortgage Rules Under

Accordingly, the Court dismisses Count VIII to the extent that it relies on Defendants' alleged violation of 12 C.F.R. § 1024.41.

### D. Count VI (Breach of Foreclosing Party's Fiduciary Duty to Mortgagor)

In Count VI of her Complaint, Plaintiff alleges that defects in the foreclosure process could deter or prevent the participation of potential auction bidders and would breach Defendants' fiduciary duty to obtain the maximum price at auction for Plaintiff. Complaint ¶¶ 132–39. Defendants argue that Count VI must fail because Defendants do not owe Plaintiff a fiduciary duty and the claim is not ripe, as no foreclosure sale has taken place. [ECF No. 13-1 at 9–10]. The Court disagrees that Defendants do not owe Plaintiff a fiduciary duty but finds that Count VI should be dismissed because it is not ripe.

"Ordinarily, the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter." HMC Assets, LLC v. Conley, No. 14-cv-10321-MBB, 2016 WL 4443152, at *29 (D. Mass. Aug. 22, 2016) (citation and quotation marks omitted). "Massachusetts courts have determined that one such instance in which a fiduciary duty arises between a lender and a borrower is in the context of a foreclosure sale." Pearson v. United States, 831 F. Supp. 2d 514, 519 (D. Mass. 2011) (citing Colonial Operating Co. v. Poorvu, 27 N.E.2d 704, 706 (Mass. 1940)) aff'd, No. 13-cv-1114, 2013 WL 6579000 (1st Cir. Oct. 2, 2013); Pemstein v. Stimpson, 630 N.E.2d 608, 611 (Mass. App. Ct. 1994)). "When conducting such a sale, a lender owes the borrower a fiduciary duty to refrain from committing fraud, bad faith or failing to use reasonable diligence in the sales process." Pearson, 831 F. Supp. 2d. at 519–20. Here, however, no foreclosure sale has yet taken place. Therefore,

---

the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72160, 72370 (Oct. 19, 2016)).

Plaintiff cannot maintain a claim against Defendants for breach of their fiduciary duties.  See Smyth v. Am.'s Servicing Co., No. 14-cv-13472-MLW, 2017 WL 1190374, at *11 (D. Mass. Mar. 30, 2017) (dismissing breach of fiduciary duty claim where no foreclosure sale had taken place).

### E.        Count IX (Breach of the Duty of Good Faith and Fair Dealing)

Plaintiff alleges that Defendants breached the Mortgage agreement's implied covenant of good faith and fair dealing when they refused to deal with Plaintiff's loan modification requests, denied Plaintiff's loan modification applications, and improperly treated Plaintiff's requests for information and notices of error.  Complaint ¶¶ 173–77.  Defendants assert that Count IX fails because Defendants had no obligation to review Plaintiff's loan modification application as she did not sign the Note and because the Mortgage agreement did not grant Plaintiff a right to a loan modification.  [ECF No. 13-1 at 10–11, 13–14].  The Court finds that because Defendants were under no obligation to provide a loan modification under the terms of the Mortgage agreement, see ECF No. 13-2 at 2–24, Plaintiff's claim for breach of the duty of good faith and dealing must be dismissed.

In Massachusetts, "'[e]very contract implies good faith and fair dealing between the parties to it.'"  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703 (Mass. 2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991)).  The covenant of good faith and fair dealing requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  T.W. Nickerson, Inc., 924 N.E.2d at 704 (citation and internal quotation marks omitted); see also Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237–38 (1st Cir. 2013).  The duty of good faith, however, "is shaped by the nature of the contractual relationship from which

the implied covenant derives." Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass.

2005). "The scope of the covenant is only as broad as the contract that governs the particular

relationship." Id. Thus, the duty of good faith and fair dealing does not "create rights and duties

not otherwise provided for in the existing contractual relationship." Id. (internal citation and

quotation marks omitted). "The essential inquiry is whether the challenged conduct conformed

to the parties' reasonable understanding of performance obligations, as reflected in the overall

spirit of the bargain, not whether the defendant abided by the letter of the contract in the course

of performance." Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 132 (D. Mass.

2005).

Here, Plaintiff argues that Defendants breached the duty of good faith by failing to

respond appropriately to her loan modification requests, delaying her loan modification

applications absent a final divorce judgment, erroneously telling her that the mortgage was

already foreclosed, and failing to promptly respond to the application that she submitted. [ECF

No. 18 at 14 n.17]. Plaintiff has not, however, alleged that the Mortgage agreement contained

any provision requiring Defendants to offer a loan modification prior to foreclosure in the event

of a default. It is "an error to extend the implied covenant to encompass a duty to modify (or

consider modifying) the loan prior to foreclosure, where no such obligation exists in the

mortgage." MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013); see also Fed.

Nat'l Mortg. Assocs. v. Tong, 799 N.E.2d 605 (Mass. App. Ct. 2003) (unpublished) ("The

covenant of good faith and fair dealing . . . cannot be read so broadly as to include an implied

term . . . obligating the Bank to renegotiate the note on terms more favorable to the [borrowers]

even if [the borrowers'] inability to perform their obligation derived from sympathetic

circumstances."). Since "the implied covenant of good faith cannot create rights and duties not

otherwise provided for in the existing contractual relationship," Count IX must be dismissed. MacKenzie, 738 F.3d at 493 (citation and quotation marks omitted).[4]

F.    **Count X (Unlawful Sex Discrimination in Violation of M.G.L. c. 151B)**

In Count X, Plaintiff alleges that Defendants have a policy or practice of not requiring married heterosexual women who are not primary wage earners to sign promissory notes that has a disparate negative impact on women in violation of M.G.L. c. 151B, § 4(3B) because they are not afforded the same opportunities to participate in loss mitigation programs as similarly situated male mortgagors. Complaint ¶¶ 178–91. Defendants argue that M.G.L. c. 151B, § 4(3B) "does not contemplate" discrimination claims in connection with "loss mitigation for existing loans, nor does it create rights in non-borrower mortgagors." [ECF No. 13-1 at 14–15; see also ECF No. 21 at 4–5 (asserting that Plaintiff cannot bring a claim for discrimination in connection with a loan transaction because she did not sign the Note)].

The Court disagrees with Defendants' assertions that M.G.L. c. 151B, § 4(3B) does not prohibit discrimination in connection with mortgage loan modification services or excludes from its ambit mortgage signatories. The statute makes it is unlawful for "any person whose business includes granting mortgage loans or engaging in residential real estate-related transactions to discriminate against any person in the granting of any mortgage loan or in making available such a transaction, or in the terms or conditions of such a loan or transaction, because of [*inter alia*] sex." M.G.L. c. 151B, § 4(3B); see also id. § 4(3B)(1) (residential real estate-related transactions covered by § 4(3B) include "the provision of other financial assistance for . . . maintaining a dwelling"). Further, nothing in M.G.L. c. 151B, § 4(3B) limits its application to discrimination

---

[4] Given that Plaintiff has not alleged any obligation under the Mortgage agreement that could serve as a basis for an implied covenant claim, the Court declines to address Defendants' argument that they had no obligation to review Plaintiff's loan modification application because she did not sign the Note.

against individuals who executed promissory notes.  See id. § 4(3B).  Thus, pursuant to M.G.L. c. 151B, § 4(3B), Defendants are prohibited from providing loan modification services in a manner that discriminates based on sex.  See MCAD Decision of the Hearing Officer, 2015 WL 2179841, at *14 (April 28, 2015) (finding that M.G.L. c. 151B, § 4(3B) prohibits lenders from providing loan modification services that discriminate based on national origin).

Nonetheless, assuming *arguendo* that disparate impact claims are cognizable under M.G.L. c. 151B, § 4(3B),[5] the Court finds that Plaintiff has failed to plead sufficient facts to support a discrimination claim.  While a plaintiff asserting a disparate impact claim need not plead or prove an intent to discriminate, see Lopez v. Commonwealth, 978 N.E.2d 67, 79 (Mass. 2012) ("[U]nlike disparate treatment claims, 'discriminatory motive is not a required element of proof' in disparate impact cases." (citation omitted)), he or she must allege that the policy in question has an adverse impact on other individuals in the protected class that transcends the individual plaintiff.  See Pechilis v. Mass. Comm'n Against Discrimination, No. 917512B, 1993 WL 818592, at *3 (Mass. Super. Ct. May 28, 1993) (noting that to establish a disparate impact claim, a plaintiff must show that "the challenged action does indeed result in unfavorable treatment of a disproportionate number of members of the protected group," because "[o]therwise, absent proof of discriminatory intent, there would be nothing to show that the challenged single action was indeed something other than what it purported to be, namely, an isolated decision made for neutral reasons which adversely affected a particular individual who happened to be a member of a protected class").  Here, Plaintiff alleges that:

> Upon information and belief, Defendant Wells Fargo has a policy or practice of not allowing separated spouses who reside in a mortgaged home and are mortgagors, but who are not makers of the underlying promissory note, to apply

---

[5] No party has cited Massachusetts authority recognizing a disparate impact claim under Section 4(3B), and the Court has not independently identified any.

for any form of loss mitigation unless the spouse who is the maker of the mortgage note either: (a) contributes their income to the household, or (b) unless there is a final divorce judgment awarding the mortgaged home to the spouse applicant and the non-occupant maker of the mortgage note permits the application and signs any resulting loss mitigation agreement.

Complaint ¶ 180. She further contends that "[u]pon information and belief, men are significantly more likely than women to be the primary wage earner" and "[f]emale mortgagors, such as the Plaintiff, are significantly less likely to be required to sign the underlying mortgage notes," and asserts that, as a result, the Defendants' policy has a "disparate negative impact on females." Complaint ¶¶ 181, 183. While the Complaint sufficiently alleges the existence of a facially neutral policy and that Plaintiff is a member of a protected class, it is wholly bereft of any facts supporting an inference that this policy has similarly harmed any woman other than Plaintiff, let alone a disproportionate number of women, such that the policy is "functionally equivalent to intentional discrimination." Lopez, 978 N.E.2d at 79; see also Von Behren v. Plainfield Cmty. Consol. Sch. Dist. 202, No. 14-cv-4618, 2014 WL 6819538, at *5 (N.D. Ill. Dec. 2, 2014) (observing that, for disparate impact claims, "the trade-off for being relieved of [the burden to show discriminatory motive] is the need to allege that the policy in question has an adverse impact beyond the single plaintiff" because, in the alternative, "policies that lack a discriminatory intent could be the basis for liability simply based on an isolated or aberrational result"). Particularly where, as here, the challenged facially neutral practice (i.e., requiring the borrower whose income serves as the basis for the loan to sign the promissory note) is reasonably related to granting mortgage loans, Plaintiff must plead some facts to support her claim that this practice has actually had a proportionately greater negative impact on women beyond her unique situation. Accordingly, Count X will be dismissed.[6]

---

[6] In their motion, Defendants also contend that, contrary to Plaintiff's Complaint, they did not unlawfully discriminate against Plaintiff based on her gender, but instead could not engage in

G. **Count VII (Unfair and Deceptive Practices in Consumer Mortgage Transaction Pursuant to M.G.L. c. 93A)**

Count VII alleges that Defendants engaged in unfair and deceptive practices by:

(i) originating an unaffordable refinanced mortgage loan that was doomed to fail; (ii) wrongfully denying Plaintiff's loss mitigation applications; (iii) attempting to foreclose without valid title to the mortgage; (iv) scheduling two foreclosure auctions with ineffective auction notices; (v) charging attorney's fees to the mortgage loan account during the Right to Cure period; (vi) inaccurately telling Plaintiff that the Property had been sold at auction; (vii) providing inaccurate and incomplete responses to Plaintiff's requests for information; (viii) notifying Plaintiff that there were options to avoid foreclosure after having scheduled an auction on the property; and (viii) attempting to schedule auctions after Plaintiff notified Defendants that U.S. Bank does not have title to the Mortgage. Complaint ¶¶ 140–67. Defendants argue that Plaintiff's Chapter 93A claim must fail because her allegations based on the Mortgage's origination are time-barred and the other underlying claims fail as a matter of law. [ECF No. 13-1 at 15–16].

Chapter 93A protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2. "'Massachusetts courts evaluate unfair and deceptive trade practice claims based on the circumstances of each case,' leaving 'the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function.'" Sullivan v. Bank of New York Mellon Corp., 91 F. Supp. 3d 154, 174 (D. Mass. 2015) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir.2009)). "The following factors apply to such a

___

discussions about loan modification services without Mr. St. Vil Maurilus. [ECF No. 13-1 at 15]. This argument raises a factual dispute that is inappropriate for resolution at the motion to dismiss stage and, in any event, is irrelevant because, as discussed supra, Plaintiff's theory of discrimination is premised on disparate impact, not disparate treatment.

determination: '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen).'" Id. (quoting Mass. Eye & Ear Infirmary, 552 F.3d at 69). A practice may be "deceptive" under chapter 93A "'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Young v. Wells Fargo Bank, N.A., 109 F. Supp. 3d 387, 397 (D. Mass. 2015) (quoting Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir.2007)) aff'd, 828 F.3d 26 (1st Cir. 2016). In relation to a foreclosure proceeding, . . . '[i]t is not enough in the context of Chapter 93A [ ] to allege that defendants foreclosed . . . in violation of Massachusetts foreclosure law. Something more is required.'" Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (citation omitted).

The Court finds that Plaintiff's allegations based on the origination of the Mortgage are time-barred by the statute of limitations. "A claim under Chapter 93A must be brought within four years of the accrual of the cause of action." Ford v. Lehman Capital, No. 10-cv-40092-FDS, 2012 WL 1343977, at *7 (D. Mass. Apr. 17, 2012) (citation omitted). Accrual of the limitations period typically occurs at the time of the allegedly unlawful conduct, but "when an injury is 'inherently unknowable,'" Massachusetts courts apply a discovery rule that tolls the statute of limitations until "an event or events have occurred that [are] reasonably likely to put the plaintiff on notice that someone may have caused [the] injury." Springfield Library & Museum Ass'n, Inc. v. Knoedler Archivum, Inc., 341 F. Supp. 2d 32, 38 (D. Mass. 2004) (quoting Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990)). Here, Plaintiff alleges that the origination of the Mortgage loan was unfair and deceptive because it "was unaffordable

. . . and doomed to fail," and "contained a higher maximum interest rate than the previous mortgage loan, and was not in the best interest of the borrowers." Complaint ¶¶ 146–49. The execution of the Note and Mortgage occurred on July 7, 2006. Id. ¶¶ 7–8. As of that date, Plaintiff knew the terms of the loan and "even assuming that the real effect of the loan was not made known to her at that point, she had four years in which to investigate." Ford v. Lehman Capital, 2012 WL 1343977, at *7. The Court finds that Plaintiff was on notice of the facts underlying her Chapter 93A claim arising from the origination of the loan as of July 7, 2006, and her claim therefore became time-barred on July 7, 2010.[7]

Defendants also contend that Plaintiff's remaining Chapter 93A allegations cannot sustain a claim for which relief can be granted because Plaintiff's related claims fail as a matter of law. [ECF No. 13-1 at 15–16]. As described supra, Plaintiffs have plausibly alleged claims for violations of M.G.L. c. 244, §§ 14, 35A, 35B, and breach of contract. Defendants' cursory argument aside, whether Plaintiff has stated a claim under Chapter 93A is a close question. On balance, Plaintiff's Complaint raises a genuine issue of fact as to whether Defendants' conduct was unfair or deceptive. The "relevant conduct" for a Chapter 93A claim "is the entirety of defendants' actions, not each action viewed in isolation," Hannigan v. Bank of Am., N.A., 48 F. Supp. 3d 135, 142 (D. Mass. 2014), and "it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." Regal v. Wells Fargo Bank, N.A., 205 F. Supp. 3d 195, 201 (D. Mass. 2016) (citation omitted). Drawing all reasonable inferences in Plaintiff's

---

[7] Plaintiff attempts to circumvent the statute of limitations by characterizing her origination claim as a defensive claim in recoupment, see ECF No. 18 at 18–20, but a plaintiff in litigation "cannot affirmatively assert a claim of recoupment . . . in response to the anticipated non-judicial foreclosure on [his or her] home." See Galgana v. Wells Fargo Bank, N.A., No. 17-cv-10924-MLW, 2018 WL 1542055, at *4 (D. Mass. Mar. 29, 2018) appeal dismissed, No. 18-1378, 2018 WL 5733664 (1st Cir. June 5, 2018).

favor, she has alleged conduct on the Defendants' part characterized by misleading representations and delay in addressing Plaintiff's inquiries about the Property, loan modification requests, and loan modification application, including falsely telling her that the Property had been foreclosed on. Such conduct plausibly supports a Chapter 93A claim. See Sullivan v. Bank of New York Mellon Corp., 91 F. Supp. 3d 154, 174 (D. Mass. 2015) ("[A]lleged conduct on Defendants' part characterized by delay, evasiveness, and misrepresentation in processing Plaintiffs' various loan modification applications . . . plausibly supports a Chapter 93A claim."). In addition, Plaintiff has alleged that she relied on Wells Fargo's erroneous December 22, 2016 statement that the Property had been sold at a foreclosure auction and did not seek a loan modification or rent out the apartment on the Property. Complaint ¶ 163. Based on these allegations, Defendants' conduct "'reasonably could be found to have caused the plaintiff to act differently than [s]he otherwise would have acted.'" Akar v. Fed. Nat'l Mortg. Ass'n, 845 F. Supp. 2d 381, 406 (D. Mass. 2012) (citation omitted). Accordingly, the Court finds that Plaintiffs' remaining allegations are sufficient to state a claim under Chapter 93A and Defendants' motion to dismiss is denied.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss [ECF No. 13] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Count VI (Breach of Fiduciary Duty), Count VIII (Breach of Contract) to the extent it relies on Defendants' alleged violation of 12 C.F.R. § 1024.41, Count IX (Breach of the Duty of Good Faith and Fair Dealing), and Count X (Unlawful Sex Discrimination in Violation of M.G.L. c. 151B). The motion is DENIED as to all other claims.

**SO ORDERED.**

February 12, 2019                                                    /s/ Allison D. Burroughs
                                                                     ALLISON D. BURROUGHS
                                                                     U.S. DISTRICT JUDGE